### SHEARER v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 77.

Circuit Court of Appeals, Second Circuit.

April 6, 1931.

Harry J. Campaign and George L. Shearer, both of New York City, for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. K. Polk, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The taxpayer was one of a firm of attorneys in New York which kept its books upon a fiscal year other than the calendar year. His distributive share from the firm for the firm year ending in 1922 was large, and he included it in his return for that year as required by section 218 (a) of the Revenue Act of 1921 (42 Stat. 245). In calculating his tax he split the share into two parts; that is to say, he calculated one tax upon the proportion allocable to 1921 as though it were alone, and another upon the remainder allocable to 1922, on the same assumption. The Commissioner computed the tax upon the part allocated to 1922 at the rates for that year, including a surtax as though that part were alone included. To this he added a second tax calculated upon the part allocated to 1921 at the rates for that year, including a surtax as though that part were an addition to the part allocated to 1922. The surtax was therefore made up by putting the 1922 part in the lower "brackets" and the 1921 in the higher, and applying the rates accordingly. The Board affirmed the Commissioner and the taxpayer appealed.

During 1922 the taxpayer bought a motorcar, for which the dealer charged him by entering the excise tax under section 900 of the Act of 1921 (42 Stat. 291), as an item separate from the purchase price, as provided in Article three of Regulations 47; the dealer in this way avoiding a tax upon any part of the separate item. This tax the taxpayer claimed the right to deduct from his income under section 214 (a), (3), 42 Stat. 239, and the Commissioner disallowed it. The appeal is also from the decision of the Board affirming this rule.

As to the first point, the difficulty arises from the omission from the Act of 1921 of section 206 of the Act of 1918 (40 Stat. .1062), a confessed inadvertence corrected in the Act of 1924. That section had provided, and section 207 of the Act of 1924 (26 USCA § 938) later did provide, that when a partner's distributive share from his firm fell in separate years, the surtax should be computed as the Commissioner proceeded in the case at bar. By Article 335 of Regulations 62 he continued this method for the year 1922, and relies upon his power to do so

here. Section 205 (c), which remained in all three acts (40 Stat. 1061, 42 Stat. 232, 26 USCA § 938 (b), provided that the rates for each year should "apply" to that part of the partner's share allocable to that year, and that the share should be allocated proportionately to the fraction of each calendar year included in the firm year. We have first to consider what is the result of the Act of 1921, disregarding the repeal of section 206, and then how far that repeal changes the result.

In express terms section 218 (a) required the whole share to be included in the return for the later year; thus precluding the addition of the earlier part to the other income of the earlier year. The taxpayer's method not only treats the earlier part as though it had accrued in the earlier year, but as though it were the only income of that year, since he does not, and of course could not, include it in his 1921 return. This is in effect to tax it as the whole income of another person received or accrued in 1921, though returned in 1922. It seems to us apparent that this result could not have been intended; section 218 (a) by requiring the whole share to be returned in one year, must have meant that the surtax should be computed upon it as though it were received in a single year. Section 205 (c) does not meet this inference; it does indeed distribute the rates of 1921 and 1922 among the allocated parts, but it does not suggest that the share shall lose its character as an entirety. The rates for each year may equally "apply" to the part allocated to that year, though the second part, whichever be chosen as second, be taken as part of a whole, that is, though it be placed in the higher "brackets." Thus, regarding alone the relevant sections of the Act of 1921, the taxpayer's pretension to treat the part allocated to 1921 as though it were a separate income for that year seems without warrant.

■ Nor do we think that the repeal of section 206 justifies an opposite inference. That section was designed to establish a special order in which the rates should be applied; the earlier rates to the later parts, the later to the earlier. The repeal can at most be understood as no more than to abrogate that method, which was indeed contrary to what would naturally have been selected. So far indeed we hold that it went, whether or no it was inadvertent. While at times the subsequent action of Congress has been held to throw light upon what had gone before, we know of no case where a repeal has been held to be brutum fulmen, because the repealed provision was later reinstated.

■ We are thus brought to the question whether the Commissioner had power to preserve the old method, despite the repeal. On the whole it seems to us that he had not. Had section 206 not been repealed, it would perhaps have been possible to say that the order in which the parts should be taken was within the compass of the Commissioner's legislative powers, though even that is doubtful. Section 205 (c) in applying the rates of each year to the part allocable to that year, if taken by itself, can scarcely be supposed to have meant to invert the actual sequence in the accumulation of the income. True, the allocation is arbitrary, since it will seldom be that an income accrues proportionately with the lapse of time. Nevertheless, the effort was to avoid perplexing inquiries by establishing a rule which in the long run would conform with the facts; not to disregard the fact that an income is accretive, and that the first part, whether or not it be arbitrarily computed, must accrue in the earlier period.

But whatever may be thought of the propriety of that interpretation, when the Commissioner has otherwise provided, it appears to us conclusive when coupled with the repeal itself. Section 206 having prescribed the inverted method, its repeal, unless we permit ourselves to disregard it because it was not deliberate, can only be understood as relieving the computation from this prescription, and to require the part allocated to the earlier year to be treated as the first part to accrue. It appears to us therefore that between 1918 and 1924, the law required the part allocable to the earlier year to be placed in the "lower brackets," and that allocable to the later year to be placed in the higher. While this makes only a trifling difference to the taxpayer at bar, we think him entitled to so much relief.

■ As to the second point, the motor tax is imposed upon the dealer, not the purchaser. Section 900 (42 Stat. 291) levies an excise upon "the following articles sold * * * by the manufacturer," and if it had been theoretically open to argument whether the dealer or the buyer was the subject of the tax, the question was set at rest by Lash's Products Co. v. U. S., 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251. In that case a similar tax under section 628 of the Act of 1918 (40 Stat. 1116) was held to be imposed upon the dealer, and to be part of the purchase price upon which the percentage should be computed, though this results in taxing the tax itself when it has been "passed on" to the

customer. Indeed, except that the regulation of the Commissioner to that effect had been confirmed by subsequent statute, it was intimated that no difference would arise, when the dealer separately "bills" the customer for the tax. We follow the language of the opinion in holding that, however set up in the sale, the tax is a part of the purchase price and that the dealer, and he alone, pays it.

It is true that, so looked at, the sum when collected by the dealer is treated as part of his gross taxable income from which he makes the deduction, though this income by hypothesis comes to him only because he must pay it out to the government as a tax. If the final incidence of the burden be traced, no doubt the only income, properly speaking, which has borne the tax is the customer's, for it is a fiction to treat as income a sum received by the dealer, which, except for the tax, would never have come to him at all. In substance, therefore, we must agree that the only person who has suffered any diminution of what would otherwise have been an income, is the customer, and that a nicer accommodation of the tax to economic burdens would have distinguished between cases in which the tax could be shown to have been added, and those where the dealer had to bear it. But the final incidence of taxation is not a measure of the person on whom the tax is levied, and it seems to us that the form of the statute must control. The fact that the Act of 1928 (26 USCA § 2001 et seq.) excluded those dealers who had succeeded in throwing the loss upon their customers, indicates no more than that Congress did not wish to make them a gratuity; it does not determine the original character of the tax.

Decree modified in accordance with the foregoing.