NEW CONSUMERS BREAD CO. v. COMMISSIONER OF INTERNAL REVENUE.
No. 7100.

Circuit Court of Appeals, Third Circuit.
Oct. 4, 1940.

W. Pitt Gifford and O. J. Graham, both of Erie, Pa., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and F. E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Before BIGGS, CLARK, and GOOD-RICH, Circuit Judges.

CLARK, Circuit Judge.

We are being asked to disagree with the dictum of the United States Supreme Court[1] and with the decisions of two other Circuit Courts of Appeal.[2] This legitimate, but somewhat drastic, questioning of authority is based on a ground that both should and does appeal to any court—that of manifest injustice. The petitioner-appellant, as its cognomen indicates, is a baking company and in the preparation of the staff of life purchased large quantities of flour from two milling companies. These latter were, of course, subject to the processing taxes of the Agricultural Adjustment Act, 7 U.S.C.A. § 609(a), the stormy economic and legal history of which is familiar. For the first three years of the Act, the miller added the tax ($1.38 per barrel) to the price paid by the baker. In the next three years the country recovered from its state of economic shock and first out of the shelters, as always, were our enterprising barristers. So in those three years the miller was asked to and did deposit the taxes in escrow pending a test of the law's constitutionality.

That test (successful for the taxpayer[3]) left considerable legal and financial confusion in its wake. Large sums had been paid into the Treasury and they had not been legally due. The Congress canceled its mistake of law and provided for the return of these monies. To that end, the Revenue Act of 1936 included Title VII, "Refunds of Amounts Collected Under The Agricultural Adjustment Act," 7 U.S.C.A. §§ 643–659. In so doing they immediately and inevitably ran into a most baffling problem in economics. We say inevitably because Congress rightly wanted only those who had suffered to benefit. Its desire in that respect is embodied in the rather elaborate provisions of Section 902 of the above cited Act, 7 U.S.C.A. § 644, now in suit. It has been argued that the recovery should run not against the United States but against the farmers to whom the assessments had been passed on.[4] However that may be, to find the "actual sufferers"[5] from any tax has been a task which has disturbed both the savants[6] and the judges, and they have not always agreed. Impact is plain—incidence is obscure. So it is not surprising that the legislative efforts and their judicial interpretations have not met with universal approval.[7]

■ The injustice here complained of proceeds from the obverse of the medallion. The petitioner feels that the incidence has fallen upon it and accordingly that it should recover the unjust enrichment. Its feelings can be expressed in the words of the writer of a law review note who commented on one of the Circuit Court of Appeals cases above cited, F. & F. Laboratories v. Commissioner, 7 Cir., 104 F.2d 563, in the following language:

"The right of the petitioner to recover in the instant case was dependent upon

[1] Anniston Mfg. Co. v. Davis, 301 U. S. 337, 350, 57 S.Ct. 816, 81 L.Ed. 1143.

[2] F. & F. Laboratories v. Commissioner, 7 Cir., 104 F.2d 563; Oswald Jaeger Baking Co. v. Commissioner, 7 Cir., 108 F.2d 375; Zinsmaster Baking Co. v. Commissioner, 8 Cir., 109 F.2d 738.

[3] United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

[4] White, The Case of the Processors v. The People, 22 Virginia Law Review 546.

[5] United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 402, 54 S.Ct. 443, 78 L.Ed. 859.

[6] Seligman, The Shifting and Incidence of Taxation 2d Ed.; Silverman, Taxation: Its Incidence and Effects.

[7] Windfall Tax and Refund Provisions of the Revenue Act of 1936, 50 Harvard Law Review 477, 480 (note); Taxation—Sales Taxes—Vendor as Agent or Taxpayer, 87 University of Pennsylvania Law Review 242 (note); Sales—AAA—Tax Refunds—Rights of Purchaser Against Processor, 5 University of Chicago Law Review 152 (note); Priority of City's Claims for Sales, Taxes Collected by Bankrupt Vendor, 46 Yale Law Journal, 164 (note); Taxation—Collection and Enforcement—Right of Retailer to Funds Collected from Consumers Under Illegal Sales Tax, 52 Harvard Law Review 330 (note); Retail Sales Tax—Sale of Materials to Shoe Repairer as Wholesale Sale, 49 Harvard Law Review 662 (note); Creditors' Rights—Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104—City's Right to Preference for Money Owed Under City Sales Tax by Insolvent Vendor, 36 Columbia Law Review 1356 (note); Johnson, AAA Refunds: A Study in Tax Incidence, 37 Columbia Law Review 910.

the interpretation placed by the Court on the statute providing for refunds. The result while clearly within the Congressional intent, seems unfortunate, and the legislation inequitable in denying recovery to the one who has borne the burden of the tax. Yet the instant statute is in accord with the general policy of Congress." · Taxation—Refunds Where Taxing Statute is Unconstitutional—Status of Claimant to Whom Burden is Shifted by Intended Taxpayer, 17 New York University Law Review 138, 139 (note).

This contention overlooks several things. The recovery of illegally paid taxes is solely a matter of governmental grace. It is true that the element of compulsion takes it out of the ancient rule of payments under a mistake of law (the practical reason underlying this seemingly harsh doctrine stems from a preference for making the citizenry and not the courts certain of the law). It is also true, however, that mistakes in favor of the sovereign, whether of law or fact, have the same quality that inheres in other dealings with supremacy. As the state taketh away, so it giveth back, and all we can do is bless the name of the state and hope for the best. The quality of mercy has strengthened with the quality of democracy and of late years the recovery of illegal taxes has received both legislative and judicial impetus.[8]

■ That impetus has not extended to the circumstances of the principal case. The statute is explicit in its inclusion of the specific word "tax". It could have stopped, but did not, with the use of the more general term "amount".[9] If there is ever a word of art, "tax" is certainly such a one. From the days of the feudal barons to the present the tax collector has represented authority in its most trying form. Every judicial definition of tax or taxation includes some reference to an "enforced contribution of money assessed by authority of sovereign state".[10] It imports, then, a particular relationship (necessary but unpleasant) between the individual (corporate or otherwise) and his, her, or its government. There is no such relationship here and the statute cannot be stretched to cover some other relationship.[11]

It is not our business to uphold the wisdom of the Congress. Since, however, the petitioner stresses what he feels to be a patent unfairness, we might add this. Congress has chosen that the revenue should deal on recovery, as on payment, with the only person with whom it deals at all, the taxpayer. It has only made certain that such person has a case in good conscience. That does not mean it wishes the Treasury to deal with all others having cases in good conscience. As we have seen, that equity depends on incidence and is hard enough to determine in any particular case. If all the alleged sufferers are to be given access to the till, the difficulty of determination becomes insuperable. On what is known as the "diffusion theory" of taxation every inhabitant is affected and so theoretically eligible for a refund.[12] Even on more scientific principles of price structure,[13] the spread is great and the number of potential litigants many. Did our aggrieved appellant by any chance include the tax, of which it generously relieved the miller, in the morning toast? If it did, it might make an attempt to secure relief in some form of action analogous to a stockholder's bill against offending corporate directors with the milling companies in the roll of an unwilling board.

The order of the United States Processing Tax Board of Review dismissing the petition is affirmed.

---

8 Field, The Recovery of Illegal and Unconstitutional Taxes, 45 Harvard Law Review 501, 506, 515.

9 The exact language of the statute is: "No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act [this chapter], unless" etc. Sec. 902, Conditions on Allowance of Refunds, 7 U.S.C.A. § 644.

10 Cases are collected in 41 Words & Phrases, Perm.Ed., p. 116 et seq.

11 The Learned Court of Appeals for the Seventh Circuit, F. & F. Laboratories v. Commissioner, 104 F.2d 563, at page 566, above cited, reinforces this argument in pointing out that Section 907, 7 U.S. C.A. § 649, relating to presumptions and burdens of proof and to the tax paid, is inconsistent with a refund to anyone other than the taxpayer.

12 Silverman, Taxation: Its Incidence and Effects, p. 90.

13 Johnson, AAA Refunds: A Study in Tax Incidence, 37 Columbia Law Review 910, above cited, sub-heading IV, The Economics of Tax Incidence, p. 924.