### IRVING AIR CHUTE CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 224.

Circuit Court of Appeals, Second Circuit.

June 15, 1944.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This petition to review a decision of the Tax Court requires us to determine whether it was error to deny the petitioner a credit under § 131 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 713, taken in its return of income for 1935, for taxes paid or accrued to a foreign country.

Sec. 131 insofar as material provides: "(a) Allowance of Credit. If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with: (1) Citizen and domestic corporation. In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States * * *."

The credit was claimed in the amount which a wholly owned British subsidiary of the petitioner had deducted, as permitted under British law, from royalty payments due the petitioner under a license contract covering British patents the petitioner owned.

The facts found by the Tax Court may be stated as follows:

The petitioner is a New York corporation which during the taxable year 1935 was the owner of three British patents relating to the manufacture of air chutes and parachutes. It likewise was the sole owner of an English subsidiary company, to which by an agreement executed in 1926 it gave an exclusive license to manufacture air chutes under these patents and to sell them to the British Government. The consideration for this license was the payment of fifteen thousand pounds and a royalty of ten per cent of the sale price of each air chute marketed. By agreement in 1933 the royalty was increased to twelve per cent.

L. HAND, Circuit Judge, dissenting.

———◆———

For convenience all sums will here be expressed in terms of American dollars. In 1935 the licensee sold air chutes at an aggregate price of $946,218.33, upon which the twelve per cent royalty amounted to $113,546.20. It rendered monthly accounts showing gross royalties earned, sums withheld by it (and designated in the petition-

John L. Kenefick and Ralph M. Andrews, both of Buffalo, N. Y., and Daniel G. Yorkey, of Ithaca, N. Y., for petitioner.

Samuel O. Clark, Jr., Asst. Atty Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

er's journal entries as "British tax paid at source"), and net royalties remitted. The amounts withheld for 1935 totaled $25,547.88, and the net royalties paid aggregated $87,998.32.

On its federal income tax return for the tax year 1935 the petitioner reported as income the full amount of its gross royalties earned under its contract with the subsidiary company. Attached to the return was the authorized form on which the petitioner claimed the sum of $25,547.-88 as taxes paid by it to the British Government upon the gross royalties, and of that amount it claimed $25,347.53 as a credit on its income tax due to the United States after application of the limitation upon such credit specified in § 131 (b) of the Revenue Act of 1934. The Commissioner denied the claim for credit and held that instead the petitioner's reported income from royalties paid by the English subsidiary should be reduced to the amount actually received from the licensee.

The sums withheld by the subsidiary company were paid by it to the British Inland Revenue Collector pursuant to schedule D of the Income Tax Act, 1918 (8 & 9 Geo. 5, c. 40), which as amended by each subsequent annual finance act through the Finance Act, 1936, embodied the income tax law in force in Great Britain at the time of the payment to the collector.

Section 1 of the 1918 Act provides that income taxes shall be charged "in respect of all property, profits, or gains respectively described or comprised in the schedules marked A, B, C, D, and E, contained in the First Schedule to this Act and in accordance with the Rules respectively applicable to those Schedules." Section 1 of schedule D designates as subject to the tax "(a) the annual profits or gains arising or accruing * * * (iii) to any person, whether a British subject or not, although not resident in the United Kingdom, from any property whatever in the United Kingdom, or from any trade, profession, employment, or vocation exercised within the United Kingdom; and (b) all interest of money, annuities and other annual profits or gains not charged under Schedule A, B, C or E and not specifically exempted from tax * * *."

A brief review of the history of British income taxation is essential if the modern statutes are to be intelligently interpreted.

Beginning with the Income Tax Act, 1803 annuities and interest and other annual payments charged upon profits made taxable by schedule D were not deductible by the taxpayer in computing his tax, but the latter could recover a portion of the tax by deducting it upon paying the annuity or interest to the recipient. The Act of 1842 provided that no assessment was to be made upon the recipient of sums paid out of taxable profits or gains, but that all of such profits or gains were to be charged on the person liable to make the annual payments, and he in turn might deduct the amount of the tax from the payment. The Customs and Inland Revenue Act, 1888, obliged any person paying annuities or interest, if they were not payable out of taxable profits or gains, to deduct the tax from the payments and to account to the Crown for the tax deducted.

This provision was first made applicable to royalties in 1907. Under the Finance Act of that year a person paying royalties, who previously had been permitted to deduct them as a business expense, was obligated to withhold from his payments the amount of the tax thereon, if the sum was not payable out of taxable profits or gains. If it was not so payable, he was authorized to withhold the amount of the tax and retain it.

These various provisions were incorporated in the Income Tax Act, 1918, which with annual amendments remains in force. The provision disallowing a deduction for royalties was carried into Rule 3(m), reading as follows: "3. In computing the amount of the profits or gains to be charged, no sum shall be deducted in respect of * * * (m) any royalty or other sum paid in respect of the user of a patent * * *." The part authorizing withholding and retention of the tax by the person paying the royalties, became General Rule 19 (2): "Where any royalty or other sum is paid in respect of the user of a patent, wholly out of profits or gains brought into charge to tax, the person paying the royalty or sum shall be entitled, on making the payment, to deduct and retain thereout a sum representing the amount of the tax thereon * * *." This provision is stipulated to be applicable to the present case.

The section obliging the payer of royalties to withhold the tax if the royalties were not paid out of profits or gains became General Rule 21 (1), providing as

follows: "Upon payment of any interest of money, annuity, or other annual payment charged with tax under Schedule D, or of any royalty or other sum paid in respect of the user of a patent, not payable or not wholly payable out of profits or gains brought into charge, the person by or through whom any such payment is made shall deduct thereout a sum representing the amount of the tax thereon at the rate of tax in force at the time of the payment."

Thus when a licensee pays a royalty under General Rule 21(1) it must withhold a sum equal to the tax upon the payment, and such sum is owed as a debt to the Crown. In re Lang Propeller, Ltd., [1926] 1 Ch. 585, [1927] 1 Ch. 120. In contrast, a licensee paying a royalty under General Rule 19 (2) is assessed as a taxpayer for the amount of the tax by the device of being denied a deduction for the amount of the royalty, and it has the right to withhold from its payment an amount equal to the tax and to retain it. Thus, in brief, General Rule 21 (1) requires payment to the revenue of the amount of the tax, but as a debt to be withheld from the royalty, while General Rule 19 (2) provides for a tax levied upon the licensee, who has the privilege of recouping from the royalty payment.

It has been held that if the licensee failed to withhold and if it had no profits and gains, so that no tax was payable by it, the Crown could assess the licensor under Schedule D. Constantinesco v. Rex, 42 T.L.R. 383, 42 T.L.R. 685, 43 T.L.R. 727.

The right to withhold, conferred by General Rule 19 (2), must be exercised by the licensee at the time of making the royalty payment or it is lost altogether, with certain exceptions not here important. If a licensor from whom a portion of his royalties have been withheld, whether under General Rule 19 (2) or 21 (1), has an income less than the amount exempt from British tax, the Crown will refund to him the amount withheld from his royalties.

It is the law in the United Kingdom that a licensor from whom a sum representing the tax has been withheld from his royalties is considered to have paid a tax on them by deduction.

In the case at bar the sum paid to the Crown by the subsidiary company was a tax levied upon and paid by it. No one else was liable for it, and it was not accountable to the Crown for the amount withheld from the petitioner. Commissioners of Inland Revenue v. Dalgety & Co., Ltd., [1930] 1 K. B. 1, [1930] A. C. 527.

Though the statement of facts is necessarily somewhat intricate because British tax law is included, the issue for decision is less so. It is whether Congress intended in the credit section above in part quoted to allow an American taxpayer who has granted patent licenses to foreigners to claim credit, as for taxes paid or accrued, for the amount of the economic burden of taxation which foreign law has permitted a foreign licensee, as distinguished from a foreign government, to compel the taxpayer to bear. On that question it is not decisive that such diminutions in the royalties stated in the contract are treated as the taxes of the licensor under British law. That is but one of the factors to be given consideration in determining whether the petitioner pays the tax within the meaning of our statute. Biddle v. Commissioner, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431. As the credit is allowable only by virtue of our statute, payments or accruals which give a basis in fact for the claim must be recognized as the taxes of the claimant in the light of our own scheme of taxation. Credits under our system of income taxation are allowed only to those who are taxpayers, both by virtue of the tax on which the credit is claimed and by virtue of the credit itself in the sense that they are directly liable for the taxes which form the basis of the credit. They are a measure of relief from the direct, as contrasted with the ultimate, burden of taxation. See, Shearer v. Commissioner, 2 Cir., 48 F.2d 552; Biddle v. Commissioner, 2 Cir., 86 F.2d 718.

This statute permitting a taxpayer to take credit for foreign taxes "paid or accrued" is an act of grace on the part of Congress, and one who seeks the benefit of its provisions must plainly establish his right by showing that he has fulfilled all the conditions upon which the allowance of the credit is made to depend.

This petitioner has failed to show that it has paid or accrued any taxes other than some which were assessed against and paid by another who was the only foreign taxpayer. It has shown that its contract, necessarily made subject to British law, is by that law made so elastic that the

licensee is. permitted to reduce the amount of petitioner's income receivable as royalties under it. The British law has made its license agreements less valuable as income producing contracts than they otherwise would have been, and perhaps the worth of its patents has been decreased; but those results are brought about not because under our concept of taxation any income of this petitioner has been taxed but because a foreign taxpayer has been given the right to recoup from royalties it would otherwise have had to pay the petitioner in full, the amount which its own government has elected to tax it instead of the petitioner, not exactly on its royalty payments to petitioner but by reason of them.

Congress might, no doubt, have made our credit statute broad enough to give taxpayers relief from such a loss of income due to the provisions of foreign law, but that it would believe such a course advisable is doubtful, and that it intended this statute to afford such relief is more doubtful still. What it did in a somewhat analogous situation is shown by the statutes providing for refunds of processing taxes and denying them to all except direct taxpayers who could show a fulfillment of all statutory conditions. Compare, New Consumers Bread Co. v. Commissioner, 3 Cir., 115 F. 2d 162, 131 A.L.R. 1329; Alexander Smith & Sons Carpet Co. v. Commissioner, 2 Cir., 117 F.2d 974.

As in our view the petitioner is not a foreign as well as an American taxpayer, it is not entitled to a credit under the statute for any reductions which the licensee made under British law in its royalty payments. It is immaterial, therefore, whether one part of the British law required or another part permitted the licensee to reduce the royalty payments. Consequently, the same result would follow whether the licensee paid a tax under General Rule 19 or accounted to the Crown under General Rule 21 for the amount it withheld from its royalty payments. In neither event does our statute permit the petitioner to use the reduction in its foreign income as a credit in computing the amount of its American taxes.

Affirmed.

L. HAND, Circuit Judge (dissenting).

The question is whether when a licensee withholds the amount of the British income tax from the royalties due a patentee, and afterwards pays the same amount as part of a tax levied upon all his "profits or gains," the patentee pays that part of the tax. The British law in form anyway levies the tax upon the royalties; and if the patentee were explicitly to agree with the licensee that he should deduct the tax and use the amount retained to pay a tax levied on that part of his "profits or gains" which the royalties represented, I should not think that there could be any doubt that the patentee would be paying the tax. But that it seems to me, is just what the British law requires the licensee to do without any agreement; as is very clearly brought out in case the licensee has no "profits or gains" subject to tax. For in that event General Rule 21 requires the licensee to deduct the tax from the royalties just the same, and to account for it to the Treasury. Indeed, it becomes his debt. The Tax Court itself thought it likely that in such cases the patentee would pay the tax. Yet I suppose it must often be uncertain, when the licensee pays the royalty, whether he will have taxable "profits or gains" for that year; and it would be absurd, I submit, to say that the patentee pays the tax, according to whether the licensee is himself taxed upon enough "profits or gains" to equal the royalties he has paid.

In Biddle v. Commissioner, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431, the only question was whether, when a corporation deducted on the face of its dividend the shareholder's proportion of the tax levied on the corporate income, the shareholder paid a tax. Such a deduction has absolutely no effect upon the shareholder; the tax paid is the same whether it is endorsed, so to say, on the dividend or not: The only difference is whether the dividend showed that it has been computed first without the tax, and then the tax had been deducted, or whether only the difference between the two sums appears. It has the purpose, and only the purpose, of enabling the shareholder to compute his "supertax" in calculating which he is not allowed to deduct the company's "standard" taxes. A patentee and his licensee are however persons in conflicting interest, unlike a corporation and its shareholders; the tax in the end comes out of the patentee's pocket not out of the licensee's, whatever the form.

Dalgety's Case, [1930] A. C. 527, was this. The British law gives relief, if the same income is taxed by the United Kingdom and a Dominion. The taxpayer there

at bar earned most of its income in Australasia, and was taxed upon it by both the United Kingdom and those Dominions. It had issued debentures, and, as permitted, it had deducted a tax upon the interest which it paid at the time of payment. This was a lawful deduction, because the debtor was not allowed to deduct the interest from its taxable "profits or gains"; and in this way it made itself whole for the United Kingdom tax on all its income. It was however allowed relief under the statute, on the ground of double taxation as to so much of its "profits or gains" as came from Australasia, although obviously it had never paid two taxes on that income except in form. Lord MacMillan in his speech admits, as I read it, that this is contrary to the general purpose of the provision; but, like the rest, he felt bound by the fact that the company had literally paid two taxes on the same income.