TAKESHI WADA AND YOUNG SOOK WADA, Petitioners. v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wada v. Commissioner
Docket No. 3202-93
United States Tax Court
T.C. Memo 1995-241; 1995 Tax Ct. Memo LEXIS 244; 69 T.C.M. (CCH) 2793; June 5, 1995, Filed *244 Decision will be entered under Rule 155. For petitioner: Stephen P. Pingree. For respondent: Jonathan J. Ono. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Jacobs, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6661
Sec. 6662(a)
1988
$ 36,083
$ 1,832
$ 9,158
-- 1989
8,133
-- -- $ 1,809
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years under consideration, and all Rule references are to the Tax Court Rules of Practice and Procedure. After a concession by petitioners, the issues for decision are: (1) Whether respondent correctly determined that petitioners' gross income for 1988 should be increased to reflect unexplained bank deposits and a specific cash expenditure made by petitioners totaling $ 110,741, and that their gross income for 1989 should be increased to reflect unexplained bank deposits of $ 34,153; (2) whether petitioners are liable for self-employment taxes on the unreported income determined by respondent; [1] (3) whether petitioners are entitled to *245 a foreign tax credit under section 901 for Japanese "social security" payments of $ 1,047 made during 1988; and (4) whether petitioners are liable for additions to tax pursuant to sections 6653(a)(1), 6661, and 6662(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Honolulu, Hawaii, at the time they filed their petition. Background
At all relevant times, petitioner Young Sook Wada (Mrs. Wada) was a U.S. citizen; petitioner Takeshi Wada (Mr. Wada) was a Japanese citizen. It is undisputed that Mr. Wada was a resident alien of the United States during the years under consideration. Mr. Wada was born in Japan. He is a high school graduate, and has taken some college courses. Mrs. Wada *246 was born in Korea. The record does not disclose the extent of her education. Petitioners have two children. For several years until early 1985, petitioners owned a home and operated a restaurant in Anchorage, Alaska. In 1985 petitioners lost both their home and business to foreclosure. As a consequence of their financial difficulties, petitioners decided to leave Alaska. They sold their car and personal possessions, and moved to Japan. Upon arriving in Japan, Mr. Wada accepted a job with Uokuni Sohonsha Co., Ltd. (Uokuni Sohonsha). Shortly thereafter, petitioners decided that better opportunities existed for them and their children in Hawaii. Thus, Mrs. Wada and the children began to travel back and forth between Japan and Hawaii. When Mrs. Wada and the children visited Hawaii, they stayed with Mrs. Wada's mother, Keong Ja Oh (Mrs. Oh). Mrs. Wada entrusted Mrs. Oh with approximately $ 60,000 in cash that petitioners had amassed. When Mrs. Wada and the children visited Hawaii, Mr. Wada remained in Japan. While Mr. Wada lived in Japan, Uokuni Sohonsha paid most of his personal expenses. Mr. Wada was able to send approximately $ 1,000 to Mrs. Wada each month that she was *247 in Hawaii because his employer paid his expenses. He testified that at some point prior to April 1988, he borrowed 6 million yen ($ 46,820) [2] from his brother and 4 million yen ($ 31,213) from his brother-in-law. [3]
In April 1988, petitioners flew into Honolulu International Airport, moving to Hawaii permanently. Persons entering or leaving the United States carrying in excess of $ 10,000 in check, cash, *248 money order, or any other negotiable instrument, are required to complete a Report of International Transportation of Currency or Monetary Instrument (Customs Form 4790). Upon entering the United States, Mr. Wada completed a Form 4790 on which he reported that he was carrying $ 15,000 cash. Mrs. Wada did not execute a Form 4790. She testified that on that day, she brought into this country approximately $ 105,000 in U.S. currency and approximately $ 1,560 in yen. She did not declare such currency because she wanted to get herself and the children through immigration and customs as quickly as possible. Specific Cash Expenditure and Bank Deposits
Shortly after their move to Hawaii, petitioners purchased a condominium in Honolulu for $ 180,000. To fund their purchase, petitioners made a $ 1,000 deposit and a $ 91,974 downpayment (by cashier's check). In addition, they obtained an $ 88,137 purchase money mortgage from International Savings and Loan. During 1988 and 1989, petitioners maintained bank accounts at the following three financial institutions in Honolulu: (1) City Bank; (2) International Savings and Loan; and (3) First Interstate Bank. During 1988, petitioners *249 deposited $ 43,417 into these accounts as follows: City Bank:
Date
Amount Deposited
04/26
$ 1,500
05/11
978
05/31
939
06/03
2,500
06/07
6,023
06/17
1,813
06/17
3,110
06/23
1,568
07/08
1,246
07/25
2,407
08/22
2,751
08/25
727
09/13
1,837
09/27
1,283
10/24
1,004
11/25
876
12/08
579
Total
31,141
International Savings and Loan:
Date
Amount Deposited
07/26
$ 1,776
09/29
1,300
10/28
1,200
11/30
1,000
Total
5,276
First Interstate Bank:
Date
Amount Deposited
07/21
$ 7,000
The deposits that petitioners made into their account at International Savings and Loan consisted entirely of fund transfers from other bank accounts. During 1989, petitioners deposited $ 42,912 into two of their bank accounts as follows: City Bank:
Date
Amount Deposited
01/26
$ 1,180
02/16
2,122
03/07
1,225
04/10
1,033
05/05
2,210
07/07
690
07/14
1,390
08/01
1,200
08/15
1,212
08/29
1,190
09/20
300
09/21
6,775
09/27
900
10/02
1,000
10/06
1,000
10/18
700
10/24
486
11/01
1,200
11/07
437
11/17
300
11/20
432
12/07
462
12/21
678
12/26
300
Total
28,422
International Savings and Loan:
Date
Amount Deposited
01/03
$ 1,250
01/31
1,200
02/28
1,250
03/31
1,200
05/01
1,200
05/30
1,190
06/30
1,200
07/31
1,200
09/05
1,200
10/02
1,200
10/31
1,200
12/01
1,200
Total
14,490
*250 Respondent determined that the aforementioned bank deposits, less amounts from wages available for deposit, together with the payments petitioners made with respect to the purchase of their condominium constitute unreported income. Japanese Social Security Payments
During 1988, Mr. Wada received wages from Uokuni Sohonsha totaling 1,380,810 yen ($ 10,775). Respondent determined such amount to constitute taxable income in the United States. Of this total, Uokuni Sohonsha withheld 40,940 yen ($ 319) for income tax, 50,000 yen ($ 390) for insurance, and 134,110 yen ($ 1,047) for an item that the parties have stipulated to be "social security". On their 1988 Federal income tax return, petitioners neither reported any of Mr. Wada's wage income earned in Japan nor claimed a foreign tax credit. Petitioners do not dispute the $ 10,775 addition of foreign earned income to their 1988 gross income. Petitioners' position is that they are entitled to a $ 1,366 foreign tax credit, which includes $ 319 of foreign income tax withheld, and $ 1,047 of foreign "social security". In the notice of deficiency, respondent allowed a $ 319 credit for foreign income tax paid, but did not allow *251 a foreign tax credit for the $ 1,047 of foreign "social security". OPINION Issues 1 and 2. Bank Deposit Method and Self-Employment Taxes
The use of the bank deposit method for computing income has been authorized by the courts for many years. Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. at 656-657; see also Hague Estate v. Commissioner, 132 F.2d 775, 777-778 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941). In analyzing a bank deposits case, deposits will be considered income when there is no evidence that they represent anything other than income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); United States v. Doyle, 234 F.2d 788, 793 (7th Cir. 1956). Petitioners contend that the moneys that they brought to Hawaii from Japan served as the *252 source of funds for the cash payments made in connection with their purchase of the condominium. Petitioners further contend that Mrs. Oh regularly returned to petitioners payments of between $ 1,000 to $ 2,000, and that these repayments constitute the source of the unexplained bank deposits. In addition, petitioners claim that prior to leaving Japan they borrowed 10 million yen ($ 78,033) from relatives living in Japan. Petitioners produced IOU's evidencing these loans. They contend that these loans, coupled with the money they claim to have previously deposited with Mrs. Oh, were the source of the funds. Not surprisingly, respondent disagrees. As the trier of fact, we are required to distill truth from falsehood. As we originally stated in Diaz v. Commissioner, 58 T.C. 560, 564 (1972): "Truth itself is never in doubt, but it often has an elusive quality which makes the search for it fraught with difficulty." After observing petitioners testify at trial, we are satisfied, as best we can be, that they were telling the truth. We found their testimony to be credible. We listened to them both testify that when they came to the United States, it *253 was difficult for them to earn a living. We believe that they brought savings with them and borrowed money from relatives in order to relieve this shortfall. We therefore find, and hold, that the disputed funds came from a cash hoard and from loans from relatives. As such, we do not sustain respondent's determination that petitioners' gross income for 1988 and 1989 should be increased to reflect the previously unexplained bank deposits and the cash expenditure petitioners made to purchase a condominium. As a result of this determination, we likewise do not sustain respondent's determination that petitioners are liable for self-employment taxes for 1988 and 1989. Issue 3. Foreign Tax Credit
Petitioners acknowledge that Mr. Wada earned $ 10,775 of wage income during 1988 from his employment with Uokuni Sohonsha in Japan. Petitioners argue, however, that section 901 entitles them to a $ 1,366 foreign tax credit. Respondent allowed $ 319 of this amount in the statutory notice of deficiency. The allowability of the remaining $ 1,047 as a foreign tax credit hinges upon whether "social security" withheld on Mr. Wada's Japanese wage income qualifies for the credit. Section *254 901(b)(3) allows an alien resident of the United States to claim as a tax credit against his U.S. Federal income tax the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country. Accordingly, the foreign tax credit claimed by petitioners under section 901 would have to be based on Mr. Wada's payment of income, war profits, or excess profits taxes to Japan. Therefore, we must determine whether the $ 1,047 of "social security" paid by Mr. Wada to Japan during 1988 qualifies as income, war profits, or excess profits taxes, such that it is creditable under section 901. [4]
*255 The purpose of the foreign tax credit is the reduction of international double taxation. See American Chicle Co. v. United States, 316 U.S. 450, 452 (1942). Nevertheless, permitting a credit for foreign taxes "paid or accrued" is "an act of grace on the part of Congress", and a taxpayer seeking to benefit from such a credit must prove that all the conditions upon which allowance of the credit depends have been fulfilled. Irving Air Chute Co. v. Commissioner, 143 F.2d 256, 259 (2d Cir. 1944), affg. 1 T.C. 880 (1943). For a tax credit to be creditable under section 901, the person claiming the credit must generally establish that the foreign levy with respect to which the credit is claimed is an income tax within the meaning of section 1.901-2(a)(1), Income Tax Regs.Sec. 1.901-2A(b)(1), Income Tax Regs. The payment cannot be a payment for a specific economic benefit. Sec. 1.901-2(a)(2)(i), Income Tax Regs. However, section 1.901-2(a)(2)(ii)(C), Income Tax Regs., states: A foreign levy imposed on individuals to finance retirement, old-age, death, survivor, unemployment, illness, or *256 disability benefits, or for some substantially similar purpose, is not a requirement of compulsory payment in exchange for a specific economic benefit, as long as the amounts required to be paid by the individuals subject to the levy are not computed on a basis reflecting the respective ages, life expectancies or similar characteristics of such individuals. [Emphasis added.]
Petitioners have not provided us with any information upon which we could ascertain whether Japanese "social security" meets the requirements of section 1.901-2(a)(2)(ii)(C), Income Tax Regs., or how it is computed. Thus, they have failed to prove that all of the conditions upon which allowance of the foreign tax credit depends have been fulfilled. Accordingly, we are required to sustain respondent's determination that this amount does not qualify for a foreign tax credit under section 901. Issue 4. Additions to Tax
The majority of the deficiencies for the years under consideration arises as a result of respondent's determination that petitioners had income from unexplained sources. As a result of our determination that the bank deposits do not constitute income to petitioners, the amount of *257 the tax liability that petitioners will owe for 1988 will not constitute a substantial understatement within the meaning of section 6661. [5] Accordingly, respondent's determination that petitioners are liable for the addition to tax pursuant to section 6661 will fall by the wayside. Further, we conclude that any remaining deficiency for either year is not due to negligence. Accordingly, we do not sustain respondent's determination that petitioners are liable for the additions to tax pursuant to section 6653(a)(1) or section 6662. To reflect the foregoing and a concession by petitioners, Decision will be entered under Rule 155. Footnotes
1. Petitioners' self-employment taxes are computational and will be resolved by our determination as to the amount of petitioners' increased income, if any, for 1988 and 1989.↩
2. The parties have stipulated that during 1988 the exchange rate between the Japanese yen and the United States dollar was 128.15 yen per dollar. We have used this exchange rate to calculate all dollar conversions.↩
3. Petitioners attempted to admit into evidence affidavits from Mr. Wada's brother and brother-in-law, both of whom live in Japan and were unavailable to testify at trial, attesting to these loans. Respondent objected to the admission of these affidavits on the grounds of hearsay. We did not consider these affidavits in reaching our decision; hence, we need not address respondent's objection.↩
4. Sec. 317(b)(4) of the Social Security Amendments Act of 1977, Pub. L. 95-216, 91 Stat. 1509, provides that, notwithstanding any other provision of law, social security taxes paid by any individual to a foreign country shall not be deductible by, or creditable against the income tax of, any such individual where an agreement pursuant to sec. 233 of the Social Security Act has been entered into between such foreign country and the United States. There does not appear to be a social security agreement (totalization agreement) between Japan and the United States. For a list of countries in which the United States has entered into totalization agreements, see Rev. Rul. 92-9, 1992-1 C.B. 344↩-345.
5. We note that there will be no deficiency for 1989. Hence, the addition to tax under sec. 6662(a) is not applicable.↩