T.C. Memo. 2016-151

UNITED STATES TAX COURT

ERIC STEPHEN GERENCSER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8381-14.                          Filed August 10, 2016.

Eric Stephen Gerencser, pro se.

Wesley J. Wong, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, Judge: Eric Stephen Gerencser is a U.S. citizen who lived and

worked in Germany as a North Atlantic Treaty Organization (NATO) contractor

during 2010 and 2011, the years in issue. For his NATO wages, Mr. Gerencser

claimed both a section 911 foreign earned income exclusion and a foreign tax

[*2] credit.[1]  The Commissioner allowed the foreign earned income exclusion but disallowed the foreign tax credit because it would be an impermissible double benefit to exclude income and then claim a credit with respect to that same income.[2]  As to other non-NATO income, Mr. Gerencser argues that he is entitled to a foreign tax credit, but his argument fails because he has not shown that he has paid or accrued any foreign taxes with respect to that income.[3]  He also argues that the Convention between the United States of America and the Federal Republic of Germany for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital and to Certain Other Taxes,[4] as amended by the 2006 Protocol[5] (Treaty), provide him relief because he qualifies as a German resident.  The Treaty's saving clause reserves the right of

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[2]See sec. 911(d)(6).

[3]See secs. 901(a) and (b), 905(b), (c)(2).

[4]Aug. 29, 1989, Tax Treaties (CCH) para. 3203.01.

[5]See Protocol Amending the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital and to Certain Other Taxes, U.S.-Ger., June 1, 2006, Tax Treaties (CCH) para. 3209 (2006 Protocol).

[*3] the United States to tax its citizens on their worldwide income, regardless of their residence. Because Mr. Gerencser is a U.S. citizen, he is not entitled to treaty relief. Further, he is liable for the section 6662(a) accuracy-related penalty because he negligently took an impermissible double benefit when he claimed both foreign earned income exclusions and foreign tax credits on his NATO wages.

## FINDINGS OF FACT

Mr. Gerencser, a U.S. citizen, worked as a NATO contractor in Heidelberg, Germany, during 2010 and 2011. The parties stipulated that he was subject to the Protocol on the Status of International Military Headquarters Set Up Pursuant to the North Atlantic Treaty.[6] Under article 7, paragraph 2 of this agreement, amounts paid for service as personnel of an Allied Headquarters are exempt from German tax.

To obtain an explanation of his tax situation, Mr. Gerencser wrote a letter dated May 6, 2009, to the Commissioner; he did not receive a response. After speaking with a colleague, Mr. Gerencser came to the understanding that he could owe a retroactive German income tax once his contract with NATO expired

---

[6]Protocol on the Status of International Military Headquarters Set Up Pursuant to the North Atlantic Treaty, Feb. 25, 1953, 5 U.S.T. 870 (1954).

[*4] because Germany would retroactively treat him as a German resident who was subject to German tax.

Mr. Gerencser filed Forms 1040, U.S. Individual Income Tax Return, for 2010 and 2011. For 2010 he reported $120,530 in NATO wages and claimed a foreign earned income and housing exclusion of $120,460 and a foreign tax credit of $26,716. He also reported U.S. military pension income, taxable interest, dividends, rental income, and a capital loss from securities transactions for that year. Similarly, for 2011 he reported $119,673 in NATO wages and claimed a foreign earned income and housing exclusion of $117,436 and a foreign tax credit of $35,229. In addition, he reported U.S. military pension income, taxable interest, dividends, rental income, and a capital gain from securities transactions.

On November 15, 2013, the Commissioner issued to Mr. Gerencser a notice of deficiency for taxable years 2010 and 2011. The Commissioner determined the following deficiencies in tax and accuracy-related penalties:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2010 | $31,823 | $6,365 |
| 2011 | 33,787 | 6,757 |

Among other adjustments, the Commissioner determined that Mr. Gerencser was not entitled to a foreign tax credit on his NATO wages because he had claimed

**[*5]** those wages were exempt under the foreign earned income exclusion. The Commissioner also determined that Mr. Gerencser had an additional capital gain for 2010 of $15,351 and was not entitled to $1,460 in itemized deductions for 2010.

When Mr. Gerencser received this notice of deficiency, he had a case pending before our Court involving his 2009 taxable year.[7] On February 20, 2014, the Court entered a stipulated decision pursuant to an agreement of the parties that Mr. Gerencser did not owe any additional tax or penalties for 2009.

Mr. Gerencser timely filed his petition while residing in Germany, and trial was held in Las Vegas, Nevada. The parties have agreed that he is not liable for tax on the unreported capital gain for 2010 and that he is entitled to the disallowed itemized deductions for 2010. The parties further stipulated that he "is not entitled to claim a foreign tax credit with respect [to] his wages from NATO for taxable years 2010 and 2011." Mr. Gerencser has not paid any German income taxes for the 2010 or 2011 taxable year as to either his NATO or his non-NATO income.

---

[7]Docket No. 4959-13.

**[\*6]**                                                   OPINION

We must decide whether Mr. Gerencser is entitled to foreign tax credits or treaty benefits related to his non-NATO income.  To do so, we apply the foreign tax credit rules under the Code and the Treaty.

## I.      Burden of Proof

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving otherwise.[8]  Allowing foreign tax credits is an act of legislative grace, and taxpayers must prove that they have met all the conditions to be entitled to any credit.[9]  In limited situations the burden may shift to the Commissioner under section 7491(a), but there is insufficient information in the record to conclude that the burden should shift under section 7491(a), and Mr. Gerencser does not argue that the burden should shift.  Accordingly, the burden remains on him.

## II.     No Foreign Tax Credit Available to Mr. Gerencser

Section 901 allows taxpayers a foreign tax credit for foreign income, war profits, and excess profits taxes they have paid or accrued during the taxable

---

[8] Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[9] Wilcox v. Commissioner, T.C. Memo. 2008-222, slip op. at 27 (relying on Irving Air Chute Co. v. Commissioner, 143 F.2d 256, 259 (2d Cir. 1944), aff'g 1 T.C. 880 (1943)).

[*7] year.[10]  Taxpayers, including cash basis taxpayers, may elect to take foreign tax credits for the year the taxes accrued.[11]  However, no credit is allowed for accrued taxes that are not paid within two years after the close of the taxable year to which they relate.[12]  If taxpayers subsequently pay foreign taxes,[13] then they can file a claim for a credit or refund within 10 years from the date prescribed by law for filing the return for the year for which such taxes were actually paid.[14]

Section 911(a) allows qualified individuals, as defined in subsection (d), to exclude from their gross income a portion of their foreign earned income and housing costs.[15]  For any amount of foreign earned income that is excluded under section 911(a), taxpayers cannot take a double benefit by claiming tax credits on

---

[10]Sec. 901(a) and (b); sec. 1.901-1(a), Income Tax Regs.

[11]Sec. 905(a); sec. 1.901-1(a), Income Tax Regs.  Notably, once taxpayers elect accrual they must follow this treatment for subsequent tax years.

[12]Sec. 905(c)(2)(A).

[13]Sec. 905(c)(2)(B).

[14]Sec. 6511(d)(3).

[15]See sec. 911(b) and (c); Adair v. Commissioner, T.C. Memo. 1995-493, slip op. at 30 (NATO employees are not considered employees of the United States and accordingly qualify for the section 911 foreign earned income exclusion).

[*8] the same income.[16]  If taxpayers elect the foreign earned income and housing exclusion treatment for their foreign earned income, they likewise cannot take a foreign tax credit for any tax paid on the foreign earned income that was excluded.[17]

A.    Mr. Gerencser Is Not Entitled to a Foreign Tax Credit on His NATO Earnings.

Mr. Gerencser is not entitled to a foreign tax credit on his NATO wages for the years in issue because he has already excluded them from income using the foreign earned income and housing cost exclusion of section 911(a).  For 2010 the Commissioner allowed Mr. Gerencser to exclude $120,460 total, which includes $28,960 of housing costs and $91,500 of foreign earned income.  For 2011 the Commissioner allowed Mr. Gerencser to exclude $117,436 total, which includes $24,536 of housing costs and $92,900 of foreign earned income.  And even if Mr. Gerencser had paid or accrued foreign tax on these wages, which he has not, he would not be entitled to a foreign tax credit because it would violate the

---

[16]Sec. 911(d)(6).

[17]Sec. 911(d)(6), (e); sec. 1.911-6(a), (c), Income Tax Regs.; see also Faltesek v. Commissioner, 92 T.C. 1204, 1207 (1989) ("[S]ection 911(d)(6) makes clear that no such credit would be available to the extent that it is allocable to amounts excluded from gross income under section 911(a)."); LeTourneau v. Commissioner, T.C. Memo. 2012-45, slip op. at 16.

**[*9]** impermissible double benefit rule of section 911(d)(6).  The parties further agreed that he is not entitled to a foreign tax credit for his NATO wages.

> B.     Mr. Gerencser Is Not Entitled to a Foreign Tax Credit on His Non-NATO Income.

Mr. Gerencser is not entitled to a foreign tax credit relating to his non-NATO income because he has not paid any foreign tax.  For 2010 and 2011 he reported U.S. military pension income, taxable interest, dividends, rental income, and capital losses from securities transactions, but he has not paid any German income taxes for 2010 or 2011.  Even if Mr. Gerencser had elected a credit for accrued foreign tax credits, he cannot receive the benefit of accrued foreign taxes because he did not pay any taxes within two years after the close of the 2010 or 2011 tax year.[18]  Accordingly, he is not entitled to any foreign tax credits on his other income streams at this time.

III.     No Treaty Relief Available for Mr. Gerencser

Mr. Gerencser argues that because he is a resident of Germany, his income should be exempt from U.S. tax under the Treaty.[19]  He is wrong.  The United

---

[18]See sec. 905(c)(2)(A).

[19]See Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital and to Certain Other Taxes, U.S.-Ger., Aug. 29, 1989, Tax Treaties (CCH) para. 3203.01.

[*10] States reserves the right to tax its citizens on their worldwide income, regardless of their residence,[20] and Mr. Gerencser is a U.S. citizen. The Treaty reflects this approach in the saving clause: "Except to the extent provided in paragraph 5, this Convention shall not affect the taxation by the United States of its residents (as determined by Article 4 (Residence)) and its citizens."[21] We have previously explained that the "United States insists on the inclusion of a 'savings clause' in its tax treaties; the effect of this clause is to reserve the right of the United States to tax its citizens and residents on the basis of the provisions of the Internal Revenue Code without regard to the provisions of the treaty."[22] None of

---

[20]See, e.g., Crow v. Commissioner, 85 T.C. 376, 380 (1985) ("The United States was historically and continues to be virtually unique in taxing its citizens, wherever resident, on their worldwide income, solely by reason of their citizenship."); Filler v. Commissioner, 74 T.C. 406, 410 (1980) ("Although many foreign countries tax their residents on their worldwide income, the United States taxes its citizens, as well as its residents, on their worldwide income.").

[21]2006 Protocol, art. I(4)(a).

[22]Filler v. Commissioner, 74 T.C. at 410; see also Abrahamsen v. Commissioner, 142 T.C. 405, 410-411 (2014); Duncan v. Commissioner, 86 T.C. 971, 974-975 (1986); cf. Crow v. Commissioner, 85 T.C. at 392-393 (holding that the saving clause did not apply to an individual who had relinquished his U.S. citizenship).

**[\*11]** the income that Mr. Gerencser had during the years in issue is exempt from the saving clause.[23]

Although the saving clause does not affect the treaty rules for relief from double taxation found in article 23, this article provides that the United States will allow a credit for income taxes paid to Germany.[24] But Mr. Gerencser has not paid any income taxes to Germany.

Mr. Gerencser further argues that the Treaty and the Code are in conflict and that he should be entitled to treaty relief despite not filing treaty-based returns for the years in issue. It is well established that neither a treaty nor a law takes precedence merely by virtue of its status as a treaty or law.[25] If there is a conflict between a Code provision and a treaty provision, then the provision that was enacted later in time controls.[26] But there first must be an irreconcilable conflict, because "when a treaty and a statute relate to the same subject, courts will always

---

[23]Article I(5) of the 2006 Protocol provides the exceptions to the saving clause found in article I(4)(a), and these exceptions do not include any of the provisions that would otherwise cover Mr. Gerencser's income.

[24]2006 Protocol, art. XII (adding a new article 23).

[25]See sec. 7852(d)(1).

[26]Lindsey v. Commissioner, 98 T.C. 672, 676 (1992), aff'd without published opinion, 15 F.3d 1160 (D.C. Cir. 1994).

**[\*12]** attempt to construe them so as to give effect to both".[27] Mr. Gerencser's conflict arguments fail because the saving clause of the Treaty bars him from obtaining relief. There is no conflict between the Code and the Treaty.

IV.    Section 6662(a) Accuracy-Related Penalties

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if the underpayment is due to, among other reasons, negligence, disregard of rules or regulations, or any substantial understatement of income tax. The Commissioner bears the burden of production as to penalties.[28] Penalties will not apply to any portion of the underpayment for which a taxpayer establishes that he or she had reasonable cause and acted in good faith.[29]

As defined in the Code, negligence includes any failure to make a reasonable attempt to comply with the provisions of title 26, and the term

---

[27]Estate of Burghardt v. Commissioner, 80 T.C. 705, 713 (1983), aff'd without published opinion, 734 F.2d 3 (3d Cir. 1984); see also Nw. Life Assurance Co. of Can. v. Commissioner, 107 T.C. 363, 378 (1996).

[28]Sec. 7491(c).

[29]Sec. 6664(c)(1).

**[\*13]** "disregard" includes any careless, reckless, or intentional disregard.[30] Negligence has been further defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances."[31] Additionally, a taxpayer is negligent if he fails to maintain sufficient records to substantiate the items in question.[32]

The Commissioner satisfied his burden of production because he showed that Mr. Gerencser negligently took foreign tax credits for his NATO wages that he had also claimed were excluded from his gross income by the foreign earned income and housing cost exclusion; a double benefit that is directly and expressly prohibited by the Code.

If a taxpayer takes a return position that would seem "too good to be true" to a reasonable person and fails to make further reasonable inquiries to verify that the return position is correct, then this is a strong indication that the taxpayer is

---

[30]Sec. 6662(c).

[31]Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g in part, remanding in part 43 T.C. 168 (1964), and T.C. Memo. 1964-299).

[32]Higbee v. Commissioner, 116 T.C. 438, 449 (2001); sec. 1.6662-3(b)(1), Income Tax Regs.

[*14] negligent.[33] Taxpayers are "required to take reasonable steps to determine the law and to comply with it"[34] and must exercise due care when claiming a deduction.[35] Here, a reasonable person would have thought the double benefit of a foreign tax credit and a foreign earned income exclusion on the same income seemed too good to be true, and Mr. Gerencser had a duty to inquire further before taking this position. After hearing about his colleague's predicament, Mr. Gerencser sent a letter to the Commissioner to further inquire but never received a response. Instead of seeking out competent advice from a tax professional, he prepared his returns and explained that he "had to come up with my own way to file those taxes that would cover, so to speak, the waterfront and capture my

---

[33]Sec. 1.6662-3(b)(1)(ii), Income Tax Regs.; see, e.g., Viralam v. Commissioner, 136 T.C. 151, 174-175 (2011) (explaining further inquiry was required because "[a] reasonable or prudent person would have perceived as 'too good to be true' a deduction for a supposed charitable contribution where the amounts deducted could be used to fund student loans for his own children"); Hansen v. Commissioner, T.C. Memo. 2004-269, 2004 WL 2677035, at *10 ("When an investment has such obviously suspect tax claims as to put a reasonable taxpayer under a duty of inquiry, a good faith investigation of the underlying viability, financial structure, and economics of the investment is required."), aff'd 471 F.3d 1021 (9th Cir. 2006).

[34]Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992).

[35]Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), aff'g T.C. Memo. 1994-217.

**[\*15]** situation." Because he did not make a reasonable inquiry to determine whether his return position was correct, he was negligent.

Mr. Gerencser did not prove he acted with reasonable cause and in good faith. Although Mr. Gerencser wrote to the Commissioner to ask for guidance, he never received a response. Instead, he believed that he would be taxed at some time in the future by Germany because of the conversations he had with his colleague, who was not a tax professional. He then reported both the foreign income and housing cost exclusion and foreign tax credit for his NATO wages. His position is not reasonable because it would provide him a double benefit. Further, Mr. Gerencser did not show that he had paid or accrued any foreign taxes to entitle him to offset his U.S. tax with foreign tax credits.

Mr. Gerencser appears to argue that the stipulated decision entered in 2014 for his 2009 taxable year should affect the outcome of this proceeding or at least should prove that his position was reasonable. To the extent that he is making a collateral estoppel argument, this argument fails because the previous stipulated decision entered for 2009 was not a conclusive determination on the merits by our Court.[36] Moreover, we look at whether the position taken by Mr. Gerencser on his

---

[36]See O'Sullivan v. Commissioner, T.C. Memo. 1994-395 (holding that a stipulated decision for another taxable year does not have preclusive affect under

(continued...)

**[*16]** return was negligent. Mr. Gerencser filed his returns for 2010 and 2011 before he commenced his 2009 case and years before he entered into a stipulated decision.

Mr. Gerencser's underpayment of tax was due to his negligence, and he is liable for the section 6662(a) accuracy-related penalties for both years.

V.      Conclusion

Mr. Gerencser is not entitled to any foreign tax credits because he has not paid or accrued any foreign tax. Accordingly, we sustain the Commissioner's disallowance of the foreign tax credits Mr. Gerencser claimed for 2010 and 2011 and find him liable for the section 6662(a) accuracy-related penalties for those years.

---

[36](...continued)
the doctrine of collateral estoppel because there has been no determination by the Court), aff'd, 95 F.3d 1158 (9th Cir. 1996); see also United States v. Stauffer Chem. Co., 464 U.S. 165, 170-171 (1984) ("As commonly explained, the doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action."); Commissioner v. Sunnen, 333 U.S. 591, 598 (1948) ("But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit.").

**[*17]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.