T.C. Memo. 2016-222

UNITED STATES TAX COURT

NAREN CHAGANTI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7344-12.                              Filed December 7, 2016.

<u>Naren Chaganti</u>, pro se.[1]

<u>Jessica R. Nolen</u>, <u>Karen O. Myrick</u>, and <u>Stephen A. Haller</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  Naren Chaganti is an attorney with clients in both Missouri

and California.  Mr. Chaganti deducted expenses associated with his legal services

_____

[1]Although Mr. Chaganti filed an entry of appearance with the Court to represent himself, his status as an attorney does not change the fact that he is appearing "pro se", which translates to "for oneself".

[*2] business for 2006 and 2007 and a net operating loss (NOL) carryforward from prior years to offset his taxable income for 2007. The Commissioner determined that Mr. Chaganti was not entitled to deductions for many of the expenses or to a foreign tax credit he claimed, that he was not entitled to deduct the NOL carryforward, that he owed additional self-employment tax, and that he was liable for section 6651(a)(1) additions to tax and section 6662(a) accuracy-related penalties for those years.[2] Mr. Chaganti did not keep adequate records to substantiate many of the expenses he reported, and he failed to prove that he had any NOL to carry forward. He also filed his tax returns late for the years in issue. Accordingly, because of failure of proof, neither is Mr. Chaganti entitled to deductions for many of the expenses and to the claimed foreign tax credit, nor is he entitled to deduct an NOL carryforward. He is also liable for the section 6651(a)(1) additions to tax for failure to file returns and the section 6662(a) accuracy-related penalties.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3]                          FINDINGS OF FACT[3]

Mr. Chaganti is a self-employed attorney who practices in Missouri and California. During the years in issue 12 of his docketed cases with activity were in St. Louis, Missouri, 1 was in Kansas City, Kansas, 2 were in Los Angeles, California, and 2 were in the San Francisco Bay area.[4]

Mr. Chaganti used two different addresses, one in St. Louis, Missouri, and one in Los Angeles, California, but had closer ties to St. Louis. He maintained a Missouri driver's license and had family ties to St. Louis during the years in issue. Accordingly, his principal residence was in St. Louis, Missouri.

Mr. Chaganti traveled from Missouri to California. Mr. Chaganti provided Southwest Airlines confirmations for some of the flights that he took during the years in issue. Most of the Southwest Airlines confirmations show that he paid less than $10 for each of the tickets. Mr. Chaganti explained that he purchased Southwest Airlines travel coupons or vouchers from Southwest Airlines patrons or

---

[3]We issued a previous opinion in this case. Chaganti v. Commissioner, T.C. Memo. 2013-285. We incorporate the findings of fact in that opinion by this reference.

[4]We reserved ruling on Exhibit 29-P. That exhibit was offered by Mr. Chaganti, but he did not cite it in his proposed findings of fact. In contrast, the Commissioner objected to Exhibit 29-P but relied on it in his answering brief. Thus, we will treat his objection as withdrawn and admit Exhibit 29-P.

[*4] employees and used them to purchase round trip tickets for himself at a cost of approximately $325 per round trip; however, Mr. Chaganti did not provide any proof of payment.

I.      Tax Returns

    A.      Prior Years

For tax year 2002[5] Mr. Chaganti filed his Form 1040, U.S. Individual Income Tax Return, and reported $25,218 in adjusted gross income.

For tax year 2003 Mr. Chaganti filed his Form 1040 and reported negative adjusted gross income of $18,048. He did not elect to forgo the NOL carryback requirement for that year. He attached a Schedule C, Profit or Loss From Business, to his 2003 return for his legal services business, reporting gross receipts of $31,568 and expenses of $50,360, resulting in a net loss of $18,792.

For tax year 2004 Mr. Chaganti filed his Form 1040 reporting negative adjusted gross income of $60,061.[6] Mr. Chaganti did not elect to forgo the NOL

---

[5]Neither party offered evidence into the record about Mr. Chaganti's tax reporting for tax years before 2002.

[6]Mr. Chaganti reported a Schedule C business loss of $59,343 but erroneously reported this amount as a passive activity loss. Mr. Chaganti also reported negative adjusted gross income of $19,510, which included a net loss of $18,792 from his 2003 Schedule C on line 21 of his Form 1040 that he characterized as an NOL. His negative adjusted gross income of $19,510 should

(continued...)

[*5] carryback for that year. The negative adjusted gross income of $60,061 is attributable in part to Mr. Chaganti's Schedule C legal services business. On his Schedule C he reported gross receipts of $30,255 and total expenses of $89,598, which yields a net loss of $59,343. Included in the total expenses were contract labor expenses of $55,000. Mr. Chaganti provided substantiation for approximately $23,600 of these expenses, $7,500 of which is for contract labor.[7]

For tax year 2005 Mr. Chaganti filed his Form 1040 and reported negative adjusted gross income of $29,104. Mr. Chaganti did not elect to forgo the NOL carryback for that year. The negative adjusted gross income of $29,104 is attributable in part to Mr. Chaganti's Schedule C legal services business. On his Schedule C he reported gross receipts of $71,200 and total expenses of $106,589, which yields a net loss of $31,968. Included in the total expenses were contract labor expenses of $55,000. Mr. Chaganti did not substantiate these expenses. The only evidence Mr. Chaganti offered to substantiate these expenses was

---

[6](...continued)
not include the $18,792 but should include the Schedule C loss of $59,343. This would result in a negative adjusted gross income of $60,061.

[7]The Commissioner disputes that Mr. Chaganti has shown that certain of these expenses were business related.

[*6] statements that he requested per diem reimbursements from his brother's business.[8]

B.    Years in Issue--2006 and 2007

Mr. Chaganti filed his Form 1040 for tax year 2006 late, and the Commissioner received his return on June 8, 2010. On his Schedule C Mr. Chaganti reported gross receipts of $43,200, travel expenses of $3,695, meals and entertainment expenses of $1,245, and other expenses of $40,000, which he described as "Prior years travel and per diem expense", in addition to other expenses. Overall, he reported a net business loss of $13,048. He attached a Form 8582, Passive Activity Loss Limitations, to his return and listed a prior year's unallowed passive loss of $59,343 described as "LEGAL SERVICES".

Mr. Chaganti filed his Form 1040 for tax year 2007 late, and the Commissioner received his return on May 28, 2010. On his Schedule C Mr. Chaganti reported gross receipts of $80,397, travel expenses of $3,463, meals and entertainment expenses of $2,226, and other expenses of $43,535, which comprised "Prior years travel and per diem expense" of $22,200, "Court ordered payments" of $20,425, and "Filing [f]ees for appeals, writs" of $910, in addition to

---

[8]The reimbursement statements that are dated 2005 show that Mr. Chaganti requested $16,240. However, there are no underlying documents such as receipts or canceled checks to show that Mr. Chaganti actually paid any expenses.

[*7] other expenses. He attached a Form 8582 to his return and listed a prior year's unallowed passive loss of $59,343 described as "LEGAL SERVICES" and used $17,208 of the loss to offset $17,208 in legal services income from his Schedule C business, leaving an overall net business profit of zero. He also claimed a foreign tax credit of $6.

II.    Notice of Deficiency

On January 6, 2012, the Commissioner issued a notice of deficiency determining the following deficiencies, additions to tax, and penalties with respect to Mr. Chaganti's Federal income tax for years 2006 and 2007:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|-------------------------------|---------------------|
| 2006 | $9,332 | $2,102 | $1,866 |
| 2007 | 21,936 | 5,192 | 4,387 |

The Commissioner determined that Mr. Chaganti was not entitled to deduct the travel expenses, meals and entertainment, and other expenses[9] that he reported for those years on his Schedules C. The Commissioner determined that he was liable for additional self-employment tax because of his increased net earnings but could

_____

[9]For 2006 the Commissioner disallowed the entire $40,000 Mr. Chaganti deducted for other expenses on Schedule C. For 2007 the Commissioner allowed $910 of the $43,535 total other expenses he deducted on Schedule C.

**[\*8]** take a corresponding deduction.  For 2007 the Commissioner determined that Mr. Chaganti could not deduct an NOL carryforward of $17,208 and that he was not entitled to a foreign tax credit of $6.

III.    Tax Court Case

While residing in Missouri, Mr. Chaganti timely filed a petition for redetermination.

Mr. Chaganti moved for partial summary judgment on whether he could deduct (1) business expenses he had paid in previous years and (2) the Court-ordered payments of $20,687 that he made in 2007.  The Commissioner filed a cross-motion for partial summary judgment on the same issues.  On December 17, 2013, the Court issued an opinion on these motions.  Chaganti v. Commissioner, T.C. Memo. 2013-285.

With respect to the first issue, the Court found that Mr. Chaganti had received $40,000 and $22,200 in 2006 and 2007, respectively, from his brother's business as reimbursement for expenses paid in 2001 through 2005.  Id. at *4, *8. The Court explained that Mr. Chaganti "was not entitled to deductions for tax years 2006 and 2007 for reimbursements related to business expenses paid in prior years."  Id. at *8.  However, the Court did not determine the "veracity of the expenses themselves."  Id. at *8 n.6.  Because Mr. Chaganti had not shown

[*9] whether he included those expenses in the NOLs he reported for 2003, 2004, and 2005, the Court did not decide this issue. Id. at *9.

With respect to the issue involving the deductibility of the Court-ordered payments totaling $20,687, the Court decided that issue in part. The Court held that Mr. Chaganti was barred under section 162(f) from deducting the $2,300 he paid in 2007. Id. at *10. The Court did not address the deductibility of the $262 sanction that Mr. Chaganti paid to opposing counsel as reimbursement for deposition fees. Id. at *10-*11. However, the Commissioner later conceded that Mr. Chaganti could deduct this amount. Finally, although the Court held that Mr. Chaganti could not deduct the $18,125 sanction imposed against him under 28 U.S.C. sec. 1927 (2006) because it was not an ordinary and necessary business expense under section 162, the Court left open the question of whether he could deduct this payment under a different theory. Id. at *12-*13.

Later, the Court held trial on the remaining issues in St. Louis, Missouri. At the close of trial we instructed Mr. Chaganti to prepare a chart or table that tied his claimed travel expenses to a trip. We explained:

> So, for example, if you say I was in Los Angeles on March 13th of 2007. And you can direct me to a docket sheet and you can direct me to a Southwest voucher. Then what you can do in your brief, maybe it's a table, maybe it's a chart, but you can include in your brief, you

[*10] know, travel to L.A., Southwest voucher this date, duration of travel, three days.

As part of his brief, Mr. Chaganti provided a table that purported to detail when he traveled during the years in issue. Mr. Chaganti prefaced the table with this disclaimer:

> Petitioner presents the following table with the number of days spent at each location based on his best information and recollection. It is respectfully suggested that there may be slight discrepancies between this table and other records.

The table had the following information: start date, end date, place, and number of days. The table did not include any citations of any documents in the record.

Overall, a myriad of issues remains for us to decide. The Commissioner conceded that a portion of Mr. Chaganti's travel was business related, that he was entitled to deduct a portion of his reported travel expenses,[10] and that he could deduct the $262 sanction he paid to opposing counsel in 2007. After these concessions, the remaining issues we must decide are: (1) whether the burden of proof shifts to the Commissioner; (2) whether Mr. Chaganti is entitled to deduct the remaining travel and meals and entertainment expenses he reported; (3)

---

[10]The Commissioner conceded $529 in travel expenses for 2006 and $507 in travel expenses for 2007.

For various business-related trips, the Court finds that Mr. Chaganti was away from his tax home for a total of 25 days in 2006 and 15 days in 2007.

**[*11]** whether Mr. Chaganti can offset net business profit with an NOL he carried forward from prior years; (4) whether Mr. Chaganti can reduce the gross receipts he reported; (5) whether Mr. Chaganti can deduct the $18,125 sanction he paid pursuant to a Court order under 28 U.S.C. sec. 1927; (6) whether Mr. Chaganti is entitled to a foreign tax credit of $6 for 2007; (7) whether Mr. Chaganti is liable for additional self-employment tax but entitled to a corresponding deduction; (8) whether Mr. Chaganti is liable for section 6651(a)(1) failure to file additions to tax; and (9) whether Mr. Chaganti is liable for section 6662(a) accuracy-related penalties. We will take each issue in turn.

OPINION

I.    Burden of Proof

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving otherwise.[11] The burden with respect to a factual issue may shift to the Commissioner under section 7491(a) if the taxpayer has introduced credible evidence regarding the issue, has complied with the necessary substantiation requirements, has maintained all records, and has cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. Mr. Chaganti

---

[11]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[*12] argues that the burden of proof should shift; however, he has not met the statutory requirements to shift the burden because he failed to substantiate many of the expenses he reported. Accordingly, the burden of proof remains on him.

II.    Deductions

The Code allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".[12] Taxpayers are not allowed a deduction for personal, living, or family expenses except where specifically allowed in the Code.[13] Deductions are a "matter of legislative grace",[14] and taxpayers must maintain sufficient records to establish their claimed deductions.[15] These records must be retained for as long as the contents may become material and must be kept available for inspection.[16]

A.    Strict Substantiation

Certain expenses are subject to strict substantiation rules under section 274(d). Such expenses include those relating to travel, meals and entertainment,

---

[12]Sec. 162(a).

[13]Sec. 262(a).

[14]INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

[15]Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

[16]Sec. 1.6001-1(e), Income Tax Regs.

[*13] gifts, and listed property under section 280F(d)(4).[17] For the years in issue listed property included passenger automobiles, any other property used as a means of transportation, any property of a type generally used for purposes of entertainment, recreation, or amusement, computers, and cellular telephones.[18] To comply with the strict substantiation rules, the taxpayer must have adequate records or sufficient evidence corroborating the amount of the expense, the time and the place the expense was incurred, the business purpose of the expense, and the business relationship of the taxpayer to any others benefited by the expense.[19] To substantiate by adequate records, the taxpayer must maintain an account book, a log, a diary, or a similar record and documentary evidence to establish each element of an expenditure.[20]

In some instances the Court may approximate the amount if the taxpayer can establish a deductible expense but cannot substantiate the precise amount.[21]

---

[17]Sec. 274(d).

[18]Sec. 280F(d)(4).

[19]Sec. 274(d).

[20]Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

[21]Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

**[\*14]** However, the taxpayer must provide some basis for that estimate.[22] And the

Court is precluded from making estimates with regard to expenses that are subject

to the strict substantiation requirements under section 274(d).[23]

B.      Per Diem Expense Deduction

As discussed above, section 162(a) allows a deduction for "the ordinary and

necessary expenses paid or incurred during the taxable year in carrying on any

trade or business".  Taxpayers are also allowed to deduct traveling expenses

"while away from home in the pursuit of a trade or business".[24]  The term "away

from home" is not defined in the Code.  Accordingly, the Commissioner adopted

the "sleep or rest rule", which was first articulated by the U.S. Court of Appeals

for the Fifth Circuit in Williams v. Patterson, 286 F.2d 333, 340 (5th Cir. 1961):[25]

> If the nature of the taxpayer's employment is such that when away
> from home, during released time, it is reasonable for him to need and
> to obtain sleep or rest in order to meet the exigencies of his
> employment or the business demands of his employment, his
> expenditures (including incidental expenses, such as tips) for the

---

[22]Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

[23]Deely v. Commissioner, 73 T.C. 1081, 1101 (1980); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

[24]Sec. 162(a)(2).

[25]See Rev. Rul. 61-221, 1961-2 C.B. 34 (adopting the "sleep or rest rule").

**[\*15]** purpose of obtaining sleep or rest are deductible traveling expenses under Section 162(a)(2) of the 1954 Code.

The Supreme Court has acknowledged this rule as achieving "not only ease and certainty of application but also substantial fairness".[26]

Although traveling expenses may be deducted under section 162, they are subject to the strict substantiation requirements of section 274(d)(1). Pursuant to section 1.274-5(g), Income Tax Regs., the Commissioner may prescribe alternative methods of substantiating certain expenses, including per diem allowances. Accordingly, the Commissioner provides an optional method by which, in certain circumstances, employees and self-employed individuals who pay or incur business-related meal and incidental expenses may use an amount computed at the Federal meals and incidental expenses rate for the locality of travel for each calendar day that the individual is away from home.[27] These expenses are deemed substantiated for purposes of section 274(d) if the individual can substantiate the time, place, and business purpose of the travel in accordance

---

[26]United States v. Correll, 389 U.S. 299, 303 (1967).

[27]Rev. Proc. 2007-63, 2007-2 C.B. 809; Rev. Proc. 2006-41, 2006-2 C.B. 777; Rev. Proc. 2005-67, 2005-2 C.B. 729.

[*16] with the regulations.[28]  Again, to substantiate an expense a taxpayer must

offer sufficient evidence to corroborate the taxpayer's statements or adequate

records;[29] and to substantiate by adequate records, the taxpayer must maintain an

account book, a log, a diary, or a similar record and documentary evidence to

establish each element of an expenditure.[30]

When determining a taxpayer's "tax home" we have previously held that as

a general rule, a taxpayer's tax home is defined as the taxpayer's principal place of

business.[31]  Conversely, "[a]n employee without a principal place of business may

treat a permanent place of residence at which he incurs substantial continuing

living expenses as his tax home."[32]  And if a taxpayer does not have a principal

---

[28]Rev. Proc. 2007-63, sec. 4.03, 2007-2 C.B. at 811-812; Rev. Proc. 2006-41, sec. 4.03, 2006-2 C.B. at 780; Rev. Proc. 2005-67, sec. 4.03, 2005-2 C.B. at 732.

[29]Sec. 274(d).

[30]Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., supra.

[31]Daly v. Commissioner, 72 T.C. 190, 195 (1979), aff'd, 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, 49 T.C. 557, 562 (1968).

[32]Barone v. Commissioner, 85 T.C. 462, 465 (1985) (relying on Sapson v. Commissioner, 49 T.C. 636, 640 (1968)), aff'd, 807 F.2d 177 (9th Cir. 1986).

**[*17]** place of business or a permanent residence, then the taxpayer's home is "wherever he happens to be."[33]

Taxpayers have the burden of proof to show that they had a tax home, and this inquiry is a factual question.[34] We have previously explained that "[w]hile the subjective intent of the taxpayer is to be considered in determining whether he has a tax home, for purposes of section 162(a)(2), this Court and others consistently have held that objective financial criteria bear a closer relationship to the underlying purpose of the deduction."[35]

Mr. Chaganti's principal place of business during the years in issue was St. Louis, Missouri. Twelve of his seventeen docketed cases during those years were in St. Louis. Mr. Chaganti argued that this breakdown did not provide the full picture because the California cases represented higher potential revenue. However, he did not offer records to show a closer connection between his

---

[33]James v. United States, 308 F.2d 204 (9th Cir. 1962); Barone v. Commissioner, 85 T.C. at 465 (relying on Brandl v. Commissioner, 513 F.2d 697, 699 (6th Cir. 1975), aff'g T.C. Memo. 1974-160, and Rosenspan v. United States, 438 F.2d 905, 912 (2d Cir. 1971)).

[34]Rambo v. Commissioner, 69 T.C. 920, 924-925 (1978).

[35]Barone v. Commissioner, 85 T.C. at 465.

[*18] business and California.  Accordingly, Mr. Chaganti's principal place of business was St. Louis, and his tax home was St. Louis.

As previously explained, travel expenses are subject to strict substantiation. Beyond the travel expense deductions that the Commissioner conceded, we hold that Mr. Chaganti is entitled to deduct only per diem amounts for meal expenses for those trips that the Commissioner conceded were business-related travel when Mr. Chaganti was away from his tax home of St. Louis, Missouri.  The exact per diem amounts for meals and incidental expenses, computed at the Federal meals and incidental expenses rate for the locality of travel for each calendar day that Mr. Chaganti was away from home, will be determined under Rule 155.[36]

Although Mr. Chaganti argued that he is entitled to use per diem amounts for lodging because he had a contract for reimbursement from his brother's business, he is mistaken.  Self-employed individuals are not eligible to use per

---

[36]See Rev. Proc. 2007-63, sec. 4.03, 2007-2 C.B. at 811-812; Rev. Proc. 2006-41, sec. 4.03, 2006-2 C.B. at 780; Rev. Proc. 2005-67, sec. 4.03, 2005-2 C.B. at 732.

[*19] diem amounts for lodging.[37]  Further, Mr. Chaganti has not provided evidence to show he incurred actual lodging expenses.

Mr. Chaganti has not adequately substantiated the remaining meals and entertainment and travel expenses he reported.  Section 274(d) requires taxpayers to establish the amount of the expense, the time and the place the expense was incurred, the business purpose of the expense, and the business relationship of the taxpayer to any others benefited by the expense.  The Court provided Mr. Chaganti the opportunity to identify records in evidence that would establish this.  He failed to do so.  The table Mr. Chaganti provided did not refer to any exhibit or provide any information about a specific client matter to show the business purpose of any of his trips.  Further, some of the dates and locations that Mr. Chaganti listed on his table were contradicted by the parties' stipulations.  Accordingly, because he did not meet his burden of proof, Mr. Chaganti may not deduct any meals and entertainment expenses or travel expenses beyond those that the Commissioner

---

[37]See Rev. Proc. 2007-63, sec. 4.03, 2007-2 C.B. at 811-812; Rev. Proc. 2006-41, sec. 4.03, 2006-2 C.B. at 780; Rev. Proc. 2005-67, sec. 4.03, 2005-2 C.B. at 732.  Compare sec. 1.274-5(f), Income Tax Regs. (allowing a deduction for travel when employees provide substantiation to their employers) with sec. 1.274-5(j), Income Tax Regs. (allowing a deduction for per diem meals, mileage, and incidental expenses under the optional method determined by the Commissioner when a taxpayer is away from home).

**[*20]** conceded were business-related expenses and beyond the per diem amounts for meals and incidentals previously addressed.

III.    Net Operating Loss Carryforward

Section 172(a) describes when a taxpayer may deduct an NOL.  An NOL is the excess of the allowable deductions over gross income, subject to specified modifications.[38]  In the case of a taxpayer who has an NOL arising in 2003, 2004, and 2005, an NOL generally must first be carried back for 2 years and if not completely absorbed, it may be carried forward for up to 20 years.[39]  Further, a taxpayer must carry the NOL back to the earliest year first.[40]  Under section 172(b)(3), a taxpayer may elect to waive the carryback period and carry the entire loss forward.  However, the election must be made by the due date (including extensions) of the return for the year in which the NOL arose and for which the election is to be in effect.[41]

Generally, the taxpayer bears the burden of establishing both the actual existence of an NOL for another year and the amount of that NOL that may be

---

[38]Sec. 172(c) and (d).

[39]Sec. 172(b)(1)(A), (H); sec. 1.172-4(b)(1), Income Tax Regs.

[40]Sec. 172(b)(2); sec. 1.172-4(b), Income Tax Regs.

[41]Sec. 172(b)(3).

[*21] carried to the years in issue.[42] A taxpayer's return is merely a statement of the taxpayer's position and cannot be used to substantiate a deduction.[43] We have jurisdiction to consider facts related to years other than the years in issue in order to redetermine the liability for the periods before us.[44]

Mr. Chaganti reported NOLs for 2003, 2004, and 2005 and used an NOL carryforward to offset net income from his Schedule C legal business in 2007. Mr. Chaganti did not elect to forgo the requirement to carry his NOLs back. We will take each claimed NOL in turn.

Put simply, for 2003 Mr. Chaganti provided no evidence of any excess loss to carry forward. Even if we accept that Mr. Chaganti had an NOL for that year, he would be required to first carry the NOL back to 2001 and 2002.[45] Mr. Chaganti did not offer evidence about his income tax for 2001 or 2002, and thus he failed to prove that the NOL was not fully absorbed in 2001 or 2002. Because of that failure of proof, he has no NOL to carry forward.

---

[42]Keith v. Commissioner, 115 T.C. 605, 621 (2000).

[43]Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979).

[44]Sec. 6214(b).

[45]See sec. 172(b)(1)(A), (H); sec. 1.172-4(b)(1), Income Tax Regs.

[*22] For 2004 Mr. Chaganti has not established that he actually had an NOL. Mr. Chaganti's NOL was a function of the net Schedule C business loss he reported. On his return Mr. Chaganti reported gross receipts of $30,255 and expenses of $89,598, which equals a net loss of $59,343. His total expenses of $89,598 included $55,000 of contract labor expenses. Mr. Chaganti provided substantiation for only $7,500 of the contract labor expenses and for approximately $16,100 of the other expenses he reported. Although Mr. Chaganti might be entitled to deduct some per diem amounts for meals for business travel for 2004, he has not proven that his business expenses exceeded the gross receipts he reported. Accordingly, he has not established a net business loss and is not entitled to any NOL deduction for 2004.

Likewise for 2005 Mr. Chaganti has not established that he actually had an NOL. Mr. Chaganti's NOL was a function of the net Schedule C business loss he reported. On his return Mr. Chaganti reported gross receipts of $71,200 and expenses of $106,589, which equals a net loss of $31,968. His total expenses of $106,589 included $55,000 of contract labor expenses. Mr. Chaganti did not substantiate any of his reported expenses for 2005. Although the Commissioner stipulated that Mr. Chaganti made a few court appearances in California during 2005, Mr. Chaganti did not submit any documents to show what expenses he

**[\*23]** incurred. The only documents Mr. Chaganti provided were bills he submitted to his brother's business for reimbursement. These documents do not show that Mr. Chaganti actually incurred expenses. Accordingly, he did not establish a net business loss and has not shown entitlement to any NOL deduction for 2005.

Overall, Mr. Chaganti cannot use an NOL to offset income for 2007 because he has not proven he had any NOL left over to carry forward for 2003 and has not proven he actually had an NOL for 2004 or 2005.

IV.    Gross Receipts

Mr. Chaganti argues that his gross receipts for 2006 and 2007 should be reduced from the amounts he reported by $40,000 and $22,200, respectively, because these amounts represented client reimbursements and should not be taxable. He cites a case holding that if a lawyer has a contractual right to reimbursement for expenses the lawyer pays on behalf of a client, then the lawyer must treat these amounts as advances.[46] Under this approach the lawyer cannot

---

[46]Mr. Chaganti cites Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23.

[*24] deduct the expenses he pays on behalf of the client and does not have gross income when the client reimburses the lawyer for the expenses the lawyer paid.[47]

Mr. Chaganti's argument has merit, but he has failed to substantiate his position. The Court previously held that Mr. Chaganti received $40,000 and $22,200 in 2006 and 2007, respectively, from his brother's business as reimbursement for expenses paid from 2001 to 2005, but the Court did not make any determination as to the "veracity of the expenses themselves."[48] Mr. Chaganti cannot treat these expenses as client advances because he failed to substantiate them.

## V.     Payment Pursuant to 28 U.S.C. Sec. 1927

In our prior opinion we held that Mr. Chaganti could not deduct the $18,125 sanction imposed by a court under 28 U.S.C. sec. 1927 because it was not an ordinary and necessary business expense under section 162, but we left open the question of whether he could deduct this payment under a different theory.[49] Mr.

---

[47]See Hearn v. Commissioner, 36 T.C. 672, 674 (1961), aff'd, 309 F.2d 431 (9th Cir. 1962); Cochrane v. Commissioner, 23 B.T.A. 202, 208 (1931).

[48]Chaganti v. Commissioner, T.C. Memo. 2013-285, at *4, *8.

[49]Chaganti v. Commissioner, at *12-*13.

**[\*25]** Chaganti now argues that he should be able to deduct the payment under section 165.

Under 28 U.S.C. sec. 1927, if an attorney "multiplies the proceedings in any case unreasonably and vexatiously", then a court may require that attorney to pay the excess costs, expenses, and attorney's fees of another party. The U.S. Court of Appeals for the Eighth Circuit, the court to which this case is appealable, has explained that "section 1927 is penal in nature".[50] Further, it has stated that "[t]he imposition of sanctions is a serious matter and should be approached with circumspection."[51]

It may be helpful to contrast the penal sanction imposed on Mr. Chaganti pursuant to 28 U.S.C. sec. 1927 with the taxation of costs under 28 U.S.C. sec. 1920 (2006). Taxation of costs is a routine part of litigation, and costs are not imposed by courts for punitive reasons. Costs that are taxed include clerk fees, transcript fees, expenses for copies, docket fees, and compensation of court-

---

[50]Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999).

[51]O'Connell v. Champion Int'l Corp., 812 F.2d 393, 395 (8th Cir. 1987).

**[\*26]** appointed experts.[52]  The Supreme Court has explained that "the assessment of costs most often is merely a clerical matter that can be done by the court clerk."[53]

Mr. Chaganti argued that he should be allowed a deduction under section 165 for the $18,125 he paid.  Section 165(a) allows taxpayers to deduct a loss they sustained during the taxable year if they were not compensated for that loss. Section 165(c) limits the deductibility of losses for individuals to those losses (1) incurred in a trade or business; (2) incurred in any transaction entered into for profit; and (3) incurred because of fire, storm, shipwreck, or other casualty, or from theft.

Because the 28 U.S.C. sec. 1927 sanction is penal, it cannot give rise to a loss incurred in a trade or business or a loss incurred in a transaction entered into for profit and clearly is not the type of circumstance contemplated in section 165(c)(3).[54]  Indeed, we have disallowed loss deductions "if the allowance thereof

---

[52]28 U.S.C. sec. 1920 (2006).

[53]Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. __, __, 132 S. Ct. 1997, 2006 (2012) (quoting Hairline Creations, Inc. v. Kefalas, 664 F.2d 652, 656 (7th Cir. 1981)).

[54]See Commissioner v. Heininger, 320 U.S. 467, 473 (1943) ("Where a taxpayer has violated a federal or a state statute and incurred a fine or penalty he

(continued...)

[*27] would frustrate sharply defined national or state policies proscribing particular types of conduct."[55] The Supreme Court explained that "to allow a deduction in those circumstances would have directly and substantially diluted the actual punishment imposed."[56] Thus, because the sanction paid pursuant to 28 U.S.C. sec. 1927 is penal, it would be against public policy to allow it to give rise to a business loss or a loss in a transaction entered into for profit under section 165(c). Accordingly, Mr. Chaganti cannot deduct the $18,125 he paid.

## VI.    Foreign Tax Credit

Section 901 allows taxpayers a foreign tax credit for foreign income, war profits, and excess profits taxes they have paid or accrued during the taxable

---

[54](...continued)
has not been permitted a tax deduction for its payment.").

[55]Lincoln v. Commissioner, T.C. Memo. 1985-300, 50 T.C.M. (CCH) 185, 186 (1985); see also Tank Truck Rentals, Inc. v. Commissioner, 356 U.S. 30, 34-35 (1958) (disallowing a deduction because the fine paid by the taxpayer "was punitive action and not a mere toll for use of the highways" and explaining that allowing "the deduction sought here would but encourage continued violations of state law by increasing the odds in favor of noncompliance"); Blackman v. Commissioner, 88 T.C. 677, 680 (1987) ("Courts have traditionally disallowed business expense and casualty loss deductions under section 162 or 165 where national or State public policies would be frustrated by the consequences of allowing the deduction."), aff'd, 867 F.2d 605 (1st Cir. 1988).

[56]Commissioner v. Tellier, 383 U.S. 687, 694 (1966); see also Fuller v. Commissioner, 213 F.2d 102, 106 (10th Cir. 1954), aff'g 20 T.C. 308 (1953).

**[*28]** year.[57] Taxpayers claiming a foreign tax credit must prove that they have met all the conditions to be entitled to any credit.[58] Because Mr. Chaganti has not provided any evidence that he paid or accrued foreign tax, he is not entitled to the foreign tax credit he claimed for 2007.

## VII. Self-Employment Tax

The Code imposes in addition to other taxes a tax on the net earnings from self-employment of individuals.[59] Net earnings from self-employment are defined as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business".[60] And section 164(f) allows a deduction from gross income for one-half of a taxpayer's self-employment tax for the year.

Mr. Chaganti has a legal services business and is liable for self-employment tax on his net earnings from that business. The exact amount of self-employment tax and any corresponding deduction will be based on Rule 155 computations.

---

[57]Sec. 901(a) and (b); sec. 1.901-1(a), Income Tax Regs.

[58]Wilcox v. Commissioner, T.C. Memo. 2008-222, 96 T.C.M. (CCH) 194, 200 (2008) (relying on Irving Air Chute Co. v. Commissioner, 143 F.2d 256, 259 (2d Cir. 1944), aff'g 1 T.C. 880 (1943)).

[59]Secs. 1401(a) and (b), 1402(b).

[60]Sec. 1402(a).

**[\*29]** VIII.  <u>Failure To File Additions to Tax Under Section 6651(a)(1)</u>

The Code requires individuals to file income tax returns by April 15 of the year following the calendar year for which the return is being filed[61] and imposes consequences on those who fail to timely file their tax returns.[62]  One such consequence is found in section 6651(a)(1), which imposes an addition to tax for failure to timely file a Federal income tax return unless the failure to file was for reasonable cause and not due to willful neglect.  A taxpayer may have reasonable cause if the taxpayer exercised ordinary business care and prudence but was not able to timely file.[63]  Willful neglect means a "conscious, intentional failure or reckless indifference."[64]

Mr. Chaganti filed his returns for 2006 and 2007 late.  He argues that his filing was late because his tax issues were complex, he was extremely busy with his business, and his mother was ill.  Tax issues are often complex, and return filing is time consuming; but complexity and lack of time alone do not remove the

---

[61]<u>See</u> secs. 6012(a)(1)(A), 6072(a).

[62]Sec. 6651(a)(1).

[63]<u>See</u> sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

[64]<u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985).

[*30] requirement to timely file one's return.[65]  Because Mr. Chaganti has not shown his tardy filing was due to reasonable cause and not due to willful neglect, he is liable for the section 6651(a) additions to tax for 2006 and 2007.

IX.    Accuracy-Related Penalties Under Section 6662(a)

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if the underpayment is due to negligence, disregard of rules or regulations, or any substantial understatement of income tax.  The Commissioner bears the burden of production as to penalties.[66]  Penalties will not apply to any portion of the underpayment for which a taxpayer establishes that he or she had reasonable cause and acted in good faith.[67]

As defined in the Code, negligence includes any failure to make a reasonable attempt to comply with the provisions of title 26, and the term "disregard" includes any careless, reckless, or intentional disregard.[68]  Negligence

---

[65]See, e.g., Ellwest Stereo Theatres of Memphis, Inc. v. Commissioner, T.C. Memo. 1995-610, 70 T.C.M. (CCH) 1655, 1659 (1995).

[66]Sec. 7491(c).

[67]Sec. 6664(c)(1).

[68]Sec. 6662(c).

[*31] has been further defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances."[69] Additionally, a taxpayer is negligent if he or she fails to maintain sufficient records to substantiate the items in question.[70]

An understatement of income tax is "substantial" if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000.[71] However, if the taxpayer has substantial authority for the tax treatment of an item, then the portion of the tax attributable to that item is not included in the understatement.[72] A taxpayer has substantial authority only if the weight of authority supporting the tax treatment of the item outweighs the contrary authority.[73]

After taking into account the parties' concessions, Mr. Chaganti's understatements for both 2006 and 2007 are greater than 5,000 and exceed 10% of

---

[69]Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g in part, remanding in part 43 T.C. 168 (1964), and T.C. Memo. 1964-299).

[70]Higbee v. Commissioner, 116 T.C. 438, 449 (2001); sec. 1.6662-3(b)(1), Income Tax Regs.

[71]Sec. 6662(d)(1)(A).

[72]Sec. 1.6662-4(d)(1), Income Tax Regs.

[73]Sec. 1.6662-4(d)(3)(i), Income Tax Regs.

[*32] the tax required to be shown on the respective returns.  Accordingly, the Commissioner has met his burden of production for the accuracy-related penalties because of substantial understatements of income tax.

The Commissioner has also satisfied his burden of production for the accuracy-related penalties because of negligence.  Taxpayers are required to maintain adequate records.[74]  And negligence includes a failure to keep adequate books and records or to substantiate items.[75]  Mr. Chaganti acted negligently because he failed to substantiate many of the expenses he reported.

Mr. Chaganti did not prove he acted with reasonable cause and in good faith.  He argued that he was not a tax lawyer and "didn't know all the intricacies * * * about tax law".  He explained that he did not keep good business records because of the chaotic nature of his legal services business.  Also, he explained that he had returned many of the client records to his clients and that some of his other records had been lost.  These explanations do not show that Mr. Chaganti acted with reasonable cause and in good faith.  We have previously explained that "[r]easonable cause requires that the taxpayer have exercised ordinary business

---

[74]Sec. 6001.

[75]Sec. 1.6662-3(b)(1), Income Tax Regs.

[*33] care and prudence as to the disputed item."[76] Mr. Chaganti did not.

Accordingly, he is liable for the section 6662(a) accuracy-related penalties for

2006 and 2007.

X.    Conclusion

Mr. Chaganti has failed to substantiate many of the expenses he reported for

his legal services business. He did not keep adequate records to prove that he

incurred NOLs to carry forward. And he did not timely file his tax returns.

Because of his failure of proof, he was not entitled to deductions for many of the

expenses or to the foreign tax credit he claimed. He is liable for self-employment

tax on his earnings. He is also liable for the additions to tax and accuracy-related

penalties for 2006 and 2007.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[76]Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).